UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

LA REYNA DE WESTCHESTER DELI GROCERY CORP.,

                             Plaintiff,

               -against-

UNITED STATES DEPARTMENT OF AGRICULTURE,
FOOD AND NUTRITION SERVICE, and UNITED
STATES OF AMERICA,

                         Defendant.

------------------------------------------------------------------X

**22-CV-1242 (KHP)**

**OPINION ON MOTION FOR
SUMMARY JUDGMENT**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  5/4/2023

**KATHARINE H. PARKER, United States Magistrate Judge:**

       This action arises out of the U.S. Department of Agriculture's Food and Nutrition

Service's ("FNS") order permanently disqualifying Plaintiff La Reyna De Westchester Deli

Grocery Corp., ("La Reyna") a retail food store, from participating in the Supplemental Nutrition

Assistance Program ("SNAP").  On February 14, 2022, La Reyna commenced this action seeking

judicial review of FNS' decision to disqualify Plaintiff from participating in SNAP.  On November

10, 2022, the United States of America, United States Department of Agriculture, and FNS

(collectively, "Defendants") moved for summary judgment to affirm FNS' decision and dismiss

the action.  (ECF No. 21). That motion is now before the Court.  For the reasons stated below,

Defendants' motion for summary judgment is GRANTED.

**FACTS**

1. **SNAP Benefits**

       Congress enacted SNAP to "safeguard the health and well-being of the Nation's

population by raising levels of nutrition among low-income households."  Food and Nutrition

Act of 2008, 7 U.S.C. § 2011. Qualified families may use SNAP benefits to purchase "eligible

food items at authorized retail food stores."  7 U.S.C. § 2013; *Loma Deli Grocery Corp. v. United*

*States*, 2021 WL 4135216, at *1 (S.D.N.Y. Sept. 10, 2021).

A household's SNAP benefits are delivered through electronic benefit transfer ("EBT")

cards, which can be used at any authorized retail food store.  7 U.S.C. § 2016(h); 7 C.F.R.§§

274.2(b), 274.3.  An EBT card can be used to purchase designated food items at participating

stores and function similarly to ATM or debit cards.  7 U.S.C. § 2016(f)(3)(B); 7 C.F.R. §§ 274.2,

274.3.  The EBT cards are credited with an allotment based on "the total value of benefits a

household is authorized to receive during each month."  *SS Grocery, Inc. v. U.S. Dep't of Agric.,*

*Food & Nutrition Serv.*, 340 F. Supp. 3d 172 (E.D.N.Y. 2018) (citing 7 U.S.C.A. § 12.)

FNS operates SNAP and is responsible for monitoring stores to ensure compliance with

the program.  7 U.S.C. §§ 2011–2036a; 7 C.F.R. § 271.3.  Stores are found non-compliant if they

are found to be "trafficking" in SNAP benefits, *i.e.* exchanging SNAP benefits for unauthorized

items or cash.  FNS conducts periodic reviews of stores and will initiate an investigation of a

store when it finds that suspicious EBT transaction data warrants an investigation.  (Def. R. 56.1

¶ 8.)  If the FNS determines that trafficking more likely than not occurred, FNS issues a "charge

letter" to the store.  7 C.F.R. § 278.6(b).  The store may respond to the charge letter and submit

FNS "information, explanation, or evidence" before "FNS makes a final administrative

determination" of whether trafficking occurred.  *Bros. Grocery & Deli Corp. v. United States*,

2021 WL 4443723 (S.D.N.Y. Sept. 28, 2021) (citing 7 C.F.R. § 278.6(b)(1)).  FNS must disqualify a

retail food store that is found to be trafficking or impose a civil money penalty ("CMP") as a

result of trafficking.  Upon this finding, the store may request administrative review by an

Administrative Review Officer ("ARO") in which the store may provide further information to

support its position.  The agency's decision after administrative review is the final act of FNS.  7

U.S.C. § 2023(a)(3), (5); 7 C.F.R. § 279.5.  The store subsequently has 30 days after receiving

notice of the final agency decision to seek judicial review of the agency's determination.  7

U.S.C. § 2023(a)(13).

### 2.  Factual Background

Plaintiff La Reyna is a convenience store located in Bronx County, New York and owned

by Regla Camilo ("Camilo").  (Certified Administrative Record ("A.R."), at 1, 187-88; Def. R. 56.1

¶ 9; Howard Decl.¶ 10.)  In 2016, La Reyna received authorization to redeem SNAP benefits and

submitted a reauthorization application in November 2020.  (A.R. 187; Howard Decl. ¶ 10.)

FNS's computerized system flagged La Reyna as having SNAP transaction patterns

consistent with possible SNAP trafficking violations for transaction data from July 2020 to

December 2020.  (A.R. 363.)  Subsequently, on February 18, 2021, an FNS contractor conducted

a store visit and documented the store characteristics and food items, including the most

expensive SNAP-eligible items offered for sale.  (A.R. 365-74.)  The contractor noted that the

store does not have an unusual pricing structure—like many similar stores, its prices often do

not end in a round dollar amount—does not round transactions, and does not sell meat

"bundles," seafood specials, or fruit and vegetable boxes.  (Def. R. 56.1 ¶ 12.)  The store has a

small checkout area, no optical scanners for checkout, no handbaskets, and no shopping carts.

(A.R. 372; Def. R. 56.1 ¶ 14.)

3

On April 22, 2021, via a "Charge Letter", FNS informed Camilo that FNS had compiled evidence that La Reyna had violated SNAP regulations by engaging in trafficking.  (A.R. 410-35.) The Charge Letter stated that an analysis revealed EBT transactions that "establish clear and repetitive patterns of unusual, irregular, and inexplicable activity" for La Reyna's type of store. (A.R. 410; Def. R. 56.1 ¶ 33.)  The Charge Letter attached a list of instances in which multiple transactions were made at La Reyna from individual household accounts within a short time period and a list of the transactions considered large in light of the store's characteristics.  (A.R. 413-22; Def. R. 56.1 ¶ 34.)  The Charge Letter warned Ms. Camilo that if the agency determined that La Reyna had committed trafficking violations, La Reyna would be permanently disqualified from SNAP and/or a CMP would be imposed.  (A.R. 410-11; Def. R. 56.1 10 ¶ 36.)  It also explained that La Reyna had to meet the criteria enumerated in 7 C.F.R. § 278.6(i) to obtain a CMP instead of permanent disqualification from SNAP.  (*Id.*)

On May 3, 2021, Camilo submitted a signed statement requesting a CMP instead of permanent disqualification, stating that she trained all store employees on the rules surrounding EBT payments.  (A.R. 442-43.)  She asserted that the store had an annual training during which Camilo and her store manager would "go through the 20-page Spanish training guide" found on the FNS website.  (*Id.*)  On June 2, 2021, Plaintiff's counsel submitted a letter responding to the Charge Letter (the "Response Letter").  (A.R. 445-48; Howard Decl. ¶¶ 20-21.) The Response Letter did not deny that the EBT transactions occurred on the dates, at the times, and in the amounts described but stated the flagged transactions were not demonstrative of fraudulent activities.

Instead, Plaintiff asserted that its size and inventory were sufficient to support the purchases and attached photographs of the inside and outside of the store, invoices from wholesale suppliers reflecting La Reyna's spending on inventory, and La Reyna's 2019 corporate income tax return reflecting $790,706.00 in gross sales and $553,494.00 spent on goods sold. (A.R. 445-46.)  The Response Letter also attached letters from four customers with household transactions that had been flagged as suspicious.  (A.R. 546-52.)  The letters did not address or explain any specific transaction but included statements that the store was clear regarding what items could be purchased by EBT cards.  (A.R. 546.)  Three of the letters also stated that the letter writers' children in the household would often stop to shop at La Reyna or use the EBT card on their own to make purchases.  (*Id*. at 548-52.)  One of the letters also noted that the household would spend, on average, "close to $50 just on breakfast items and then return to the store to purchase items for dinner."  (A.R. 550.)

After considering the evidence it had compiled and the information and documents submitted by La Reyna, FNS informed La Reyna by letter on June 9, 2021 that it had concluded that the violations cited in the charge letter occurred at the store.  (A.R. 642-46.)  The letter further explained that FNS had considered La Reyna's eligibility for a CMP according to the terms of §278.6(i) and determined that La Reyna failed to submit sufficient evidence of an effective compliance policy and program to prevent SNAP violations.  (*Id.*)  As a result, La Reyna was permanently disqualified from participating in the SNAP program effective upon receipt of the letter.  (*Id.*)

La Reyna subsequently retained counsel and timely requested administrative review by an ARO.  (A.R. 651.)  On July 26, 2021, an ARO acknowledged the request and informed La Reyna that it could submit additional information or evidence.  (A.R. 658.)  Plaintiff's counsel received the letter via email on July 26, 2021 (A.R. 660), but La Reyna did not submit further evidence (Howard Decl. ¶ 24).  On January 13, 2022, the ARO informed La Reyna of FNS's final decision.  (A.R. 668.)  The ARO concluded that there was sufficient evidence to support a finding that it was more likely than not that trafficking occurred and permanent disqualification of La Reyna from participation in SNAP was appropriate.  (*Id.*)

### 3. Procedural History

On February 14, 2022, La Reyna filed its Complaint, seeking review of the agency's final decision under 7 U.S.C. § 2023 and 7 C.F.R. § 279.7.  (*See* ECF No. 1 ("Compl.") ¶ 1.)  Defendants filed an Answer on June 10, 2022.  (ECF No. 7.)  On July 12, 2022, the parties appeared in front of the Court for a case management conference where the Court set a briefing schedule for the present motion and ordered the parties to meet and confer regarding any additional discovery that Plaintiff requested.  (ECF No. 13.)  On September 30, 2022, the parties wrote to the Court stating that the parties met and conferred and agreed that no additional discovery was required.  (ECF No. 19.)  Defendants filed a Motion for Summary Judgment on November 10, 2022, asserting there is no genuine issue of material fact as to the validity of FNS's determination that La Reyna more likely than not trafficked in SNAP benefits or FNS's imposition of a permanent disqualification.  (ECF No. 21.)  For the reasons that follow, the Court grants Defendants' motion for summary judgment.

**LEGAL STANDARD**

**1. Motion for Summary Judgment**

"Summary judgment is warranted if 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005) (quoting Fed. R. Civ. P. 56(c)). A fact is "material" if "it might affect the outcome of the suit under the governing law." *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene*, 746 F.3d 538, 544 (2d Cir. 2014) (quotation marks and citation omitted).

"It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). However, "[w]hen the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Simsbury-Avon Pres. Club, Inc. v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009). Accordingly, summary judgment for the defendant is appropriate where the evidence in support of the plaintiff's case is "so slight" that a jury, considering the record as a whole, cannot reasonably find for the plaintiff. *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994) (citation omitted).

In deciding the motion, the Court must resolve all ambiguities and draw all inferences in favor of the nonmoving party. *Jeffreys*, 426 F.3d at 553. However, a mere

"scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat summary judgment; rather, "there must be evidence on which the jury could *reasonably* find" for the nonmoving party. *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). "[M]ere speculation and conjecture" are not sufficient to preclude the granting of the motion. *Harlen Assocs. V. Inc. Village of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001).

**2. Judicial Review**

A store "aggrieved by a final administrative action of FNS may obtain judicial review of the agency decision." 7 U.S.C. § 2023(a)(13). Judicial review of a FNS decision disqualifying a storm from participation in SNAP is a two-step process. First, a district court will review the matter de novo, "in which the court shall determine the validity of the questioned administrative action in issue" to determine whether a trafficking violation occurred. 7 U.S.C. § 2023(a) (15). The court "must reach its own legal and factual decisions based on the preponderance of the evidence and should not limit its consideration to matters previously appraised in the administrative proceedings." *SS Grocery, Inc.*, 340 F. Supp. 3d at 179.

Plaintiffs, as the parties challenging their permanent disqualification from SNAP, bear the burden of proving by a preponderance of the evidence that the agency's action was "invalid." *Capellan v. United States*, 2020 WL 1047907 (S.D.N.Y. Mar. 4, 2020). To meet this burden, the plaintiff must demonstrate that "each cited instance of trafficking" was invalid, as the FNS may permanently disqualify a participant even after just one instance of trafficking. *SS Grocery, Inc.*, 340 F. Supp. 3d at 180.

Second, if the court finds a violation occurred, the court determines, as a matter of law, whether the sanction FNS has imposed was "arbitrary or capricious, *i.e.*, whether it was unwarranted in law or without justification in fact." *E. Vill. New Deli Corp. v. United States*, 2021 WL 5507048 (S.D.N.Y. Nov. 23, 2021) (citing *Willy's Grocery v. United States*, 656 F.2d 24, 26 (2d Cir. 1981)).  The agency's sanction decision is accorded substantial deference.  *Id*.  A sanction is not arbitrary and capricious when a federal agency properly adheres to its own regulations and guidelines when imposing it.  *Lawrence v. United States,* 693 F.2d 274, 276 (2d Cir. 1982) (citing *Young Jin Choi v. United States*, 944 F. Supp. 323, 325 (S.D.N.Y. 1996)).

## ANALYSIS

### 1.  Defendant's Determination that La Reyna Engaged in Trafficking is Supported

At the first step, the Court considers the record de novo to determine whether a trafficking violation occurred.  Under the applicable SNAP regulations, unlawful "trafficking" in SNAP benefits includes: "[t]he buying, selling, stealing, or otherwise effecting an exchange of SNAP benefits issued and accessed via Electronic Benefit Transfer (EBT) cards… for cash or consideration other than eligible food, either directly, indirectly, in complicity or collusion with others...."  7 C.F.R. § 271.2.  In determining whether a trafficking finding is appropriate, FNS is permitted to consider "facts established through on-site investigations, inconsistent redemption data, evidence obtained through a transaction report under an electronic benefit transfer system, or the disqualification of a firm from the Special Supplemental Nutrition Program for Women, Infants and Children."  7 C.F.R. § 278.6(a).  Under the FNA, the FNS may

permanently disqualify a store "upon ... the first occasion" of SNAP benefits trafficking.  7 U.S.C. § 2021(b)(3)(B).

In making their determination, FNS considered the store's transaction data from July 2020 to December 2020, redemption data from comparable stores, and analysis of shopping patterns of selected La Reyna households.  After review of the record, the evidence here demonstrates patterns of SNAP transactions at La Reyna that are inconsistent with the store's size, layout, equipment, inventory, location, and SNAP transactions at similar stores and consistent with trafficking in benefits.

### A.  Large Number of Transactions in a Short Period of Time

There were several EBT transactions involving a large number of transactions conducted close in time to other transactions by the same household.  (A.R. 376.)  During the review period, there were 31 sets of suspicious transactions, or 71 total transactions, that involved multiple transactions made in a short amount of time, which amounted to $3,518.18 in benefits by 11 different households.  *Id.*  These transactions involved instances where beneficiaries made a purchase and then made another one within two minutes.  On one occasion, a household purchased $71.50 in SNAP eligible items at 7:26 p.m., and $64.00 in such items two minutes later, at 7:28 p.m.  (*Id.*)  In another instance, a different household purchased $57.70 at 7:11 p.m. and made a $22.00 purchase three minutes later.

Multiple transactions run within a short period of time is suspicious and raises questions regarding the transactions' legitimacy.  It is highly improbable that a household would split a transaction into two halves when they are both being used for SNAP benefits.

These transactions are particularly suspicious where the second transaction appears too large to consist of items the household forgot to purchase on the first visit. *See SS Grocery, Inc.*, 340 F.Supp.3d at 181 (finding implausible that a small location with one cash register, no optical scanner, and a limited stock would be able to run multiple high value transactions within a short period of time).  As in *SS Grocery, Inc.*, La Reyna does not have optical scanners or baskets, raising the question of how the customer would carry over $130 worth of items to the cash register at once or carry items totaling $71.50 and then $64 of items only two minutes later and how the cashier could have keyed in $64 of items within two minutes.  Although the store had some items that were above $10, none of the items had more than eight units, (A.R. 373-74) and only four items cost more than $10.00 (A.R. 372-74, 378), which made it more unlikely that a customer purchased, and the store ran $64 in SNAP eligible items within two minutes of buying $71.50 in SNAP eligible items.

Further, many of these suspicious transactions end in a cents value of 0.00, 0.25, 0.50, or 0.75, which is an additional indication of trafficking because La Reyna does not have an unusual pricing structure or a practice of rounding transactions.  In these 71 transactions flagged as suspiciously close in time to another transaction by the same household, 23 of them ended in a round dollar amount, while another 14 ended in a round fifty cents.  (A.R. 377.)  In the examples above, both of the transactions made within two minutes of each other ended in a cents value of 0 as did both of the transactions made within three minutes of each other by the other household.   Another household spent $279.00 at La Reyna in four transactions over

approximately 47 hours and three of those four transactions ended in $0.75 or $0.50 and the fourth ended in a 0.  (A.R. 377.)

It is highly implausible that these transactions are legitimate in a store with a typical pricing structure and no bundles, which could explain the rounded transactions.  Therefore, not only were the transactions suspiciously close in time and a high value, but they also ended in a suspicious cents value.  Accordingly, the Court agrees with Defendant's conclusion that these numbers appear contrived, and La Reyna has not otherwise explained how these transactions could be legitimate.

B. **Recipients making excessively large purchase transactions in light of La Reyna's characteristics and food stock**

La Reyna also has a large number of high value transactions especially in light of its size and food stock.  Between July 2020 and December 2020, 239 transactions were flagged as large meaning they were above $40.00, including six transactions that were $100.00 or more and 51 that were $60.00 or more.  (A.R. 418-22.)  The FNS compared this to the average transaction amount for convenience stores during the review period, which was $8.71.  (A.R. 378.)  These transactions, particularly the ones of over $100, are suspicious because La Reyna has no handbaskets or carts, no optical scanner, a small checkout area, and only four items that cost more than $10.00.  (A.R. 372-74, 78.)

These large transactions are particularly suspicious when compared to other stores in the area.  La Reyna is located in an area with many stores that are cheaper, better stocked, and also take EBT benefits.  FNS conducted a store comparison analysis and found there are 6 large groceries, 13 supermarkets, and 6 superstores within a one-mile radius of La Reyna, including a

super store 0.14 miles away.  (A.R. 380).  FNS looked at three nearby comparable stores that were all within 0.1 miles of La Reyna for photo and stock comparisons.  (A.R. 393.)  These three stores likely served the same people and had a similar food stock.  (A.R. 388, 393.)  However, La Reyna had 31 flagged transaction sets that involved multiple transactions in a short amount of time while two of the comparator stores had no flagged transactions and the third store had four flagged transactions.  (A.R. 393.)  La Reyna also had 239 transactions during the period that were more than $40 while one comparator store had 0 transactions above $40, another had 14 transactions, and the last store had 117 transactions above $40.  (A.R. 394-95.)

To justify such high transactions, La Reyna would have to have the adequate space and equipment to maintain a stock that supports this quantity of large transactions.  However, the evidence shows that La Reyna does not have the necessary space or equipment.  Accordingly, the Court agrees that these 239 large transactions are indicative of trafficking.

### C.  La Reyna's SNAP transactions exceed transactions at comparable stores

FNS also evaluated five individual households that had spending patterns at La Reyna that were indicative of trafficking.  These households shopped at other nearby, larger grocery stores but still spent a large percentage of their SNAP benefits at La Reyna.  One household spent 38% of its total SNAP benefits from July to December 2020 at La Reyna, including one instance where the household spent $199.55 at a supermarket and then spent $167.00 at La Reyna within 20 minutes of that transaction.  (A.R. 398-99.)  Another household spent 62% of its SNAP benefits from July to December 2020 at La Reyna.  Similar to the household above, this household spent $77.06 at a superstore and then spent $113.50 at La Reyna less than half an

hour later.  (A.R. 402-04.)  In another month, this household spent only $31.13 at a superstore but an hour later, this household spent $112.18 and then spent $24 a few minutes later at La Reyna.  The other three households evaluated similarly spent 56-59% of their SNAP benefits at La Reyna during the evaluated period and similarly spent a large amount at other stores before spending a large amount at La Reyna soon after.  (A.R. 399-409.)

The individual households spending pattern is consistent with trafficking as La Reyna does not have the products and stock to support a large proportion of a household's SNAP spending.  Moreover, not only were the individual households' transactions at La Reyna suspiciously high, many ended in a cent value ending in 0.  It is also notable that some of these households spent more of their benefits at La Reyna only a short time after spending less money at a better stocked store.  This evidence is sufficient to support a finding of trafficking. *See East Village New Deli Corp.*, 2021 WL 5507048, at *7 (finding similar individual household data provided evidence of trafficking violations).

### 2. Plaintiff did not Refute Determination of Trafficking

Because permanent disqualification is warranted even after just one instance of trafficking, La Reyna has the burden of demonstrating that each cited instance of trafficking was invalid.  *SS Grocery, Inc.*, 340 F. Supp. 3d at 180.  Even when examined in the light most favorable to La Reyna, La Reyna did not meet its burden of proving by a preponderance of the evidence that they did not engage in trafficking.  *Capellan v. United States*, 2020 WL 1047907 (S.D.N.Y. Mar. 4, 2020).

Plaintiff does not refute that the flagged transactions occurred but raises several arguments to refute FNS' determination of trafficking based on these transactions and asserts that the evidence it provided to FNS raises a genuine issue of material fact.  First, La Reyna argues that "co-shopping" explained the transactions that occurred in a short period of time. Second, it argues that the large transactions including the six EBT transactions over $100 were due to customers buying in bulk or for multiple family members.  Third, Plaintiff argues that the comparably high SNAP transactions were attributed to good customer service and because the store carried items that customers desired.

Plaintiff's explanation of co-shopping is insufficient to explain all of the transactions that FNS flagged.  Plaintiff argues that the 31 sets of transactions occurred in quick succession because household members would frequently "co-shop," meaning family members would shop using the same SNAP account or shop at the same time, but separate their purchases into multiple transactions at the store.  To support this claim, Plaintiff includes affidavits from households stating they co-shopped.  However, this explanation is insufficient.  None of the letters address specific transactions that were flagged or present any information about flagged transactions that show they were legitimate.  Instead, the customers broadly state that they co-shopped.  Further, one of the four customers did not make any of the transactions for which the disqualification was based.  (A.R. 413-17.)  The other three customers only accounted for six of the sets flagged for occurring in quick succession.  *See Nova Grocery, Inc. v. United States,* 2022 WL 2657119 (E.D.N.Y. July 8, 2022) (finding four customer affidavits that explained a small number of the transactions on which disqualification was based was insufficient to call the

inference of trafficking into question).  Specifically, one household accounted for 8 of the 31

transaction sets flagged, and there was no affidavit filed for that household.  Thus, even if co-

shopping could account for some suspicious transactions, there remains ample evidence to

demonstrate La Reyna engaged in trafficking.

Second, Plaintiff argued that customers had EBT transactions over $100 because they

were buying in bulk or for multiple family members.  Plaintiff asserts that the customer

affidavits support this point, but as discussed above, the customer affidavits only correspond to

31 of the 239 transactions flagged for extremely large purchases.  Further, the customer

affidavits state they have large families but do not state that they buy in bulk or are able to.

(A.R. 546-553.)  Also, it is unlikely that these large purchases were legitimate because La Reyna

had no optical scanners for checkout, did not carry more than eight of each item, had no

shopping carts or shopping baskets, and only had a small checkout area, which would impede

the personnel's ability to transact such large transactions.  Thus, even if customers used their

own bags or were assisted by friends or family members, as Plaintiff claims, the store's

inventory and infrastructure still would not account for such high purchases.

La Reyna refutes that its inventory does not support these large transactions with

photographs of the store.  (A.R. 445-46).  However, the photographs only reinforced the lack of

available stock, lack of unique items, and multitude of low-cost items such as single-serving

bags of chips, candy, snacks, and canned goods.  (A.R. 449-54.)  La Reyna also provided FNS

with invoices and receipts to demonstrate the amount they spent on food inventory to support

the high transactions.  (A.R. 445-46, 455-528.)  However, a number of these invoices are from

after the six-month period when the suspicious transactions took place.  (A.R. 455-92.)  Other

receipts included items that cannot be purchased with SNAP benefits like tobacco products,

medicine, cleaning products, and hygiene products.[1] (A.R. 455-527).  Therefore, this evidence

on its own is insufficient to demonstrate a genuine issue of material fact.  *See Nadia Int'l Mkt. v.*

*United States*, 2015 WL 7854290 (D. Vt. Dec. 2, 2015)), *aff'd*, 689 F. App'x 30 (2d Cir. 2017)

(citing *Young Choi Inc. v. United States*, 639 F. Supp. 2d 1169, 1179 (D. Haw. 2009)) (rejecting

the plaintiff's "general justifications for large expenditures" where plaintiff "present[ed] no

facts directly rebutting the observations and analysis" of the Agency).

The third argument La Reyna raised was that the comparably high SNAP

transactions were attributed to good customer service and because customers liked the

store's inventory.  La Reyna again relies on the customer letters to support this point as the

customers deny they observed anything indicative of trafficking but instead often went to

La Reyna because of the inventory.  (A.R. 546-53.)  These are again generalized statements

without reference to any specific food items the customers purchased on any particular

date.  *See Sky Grocery, LLC v. United States Dep't of Agric.-Food & Nutrition Serv*, 2017 WL

1054484 (D. Conn. Mar. 20, 2017) (general justifications for statistically unusual EBT

transactions are insufficient where even instance of trafficking is sufficient to demonstrate

a trafficking violation).  Plaintiff also relies on the declaration of Camilo, the owner and

manager of La Reyna, attesting that Camilo was present for nearly all transaction at the

store, that the store did not traffic in benefits, and that all transactions were legitimate.

---

[1] USDA, *What Can SNAP Buy?* https://www.fns.usda.gov/snap/eligible-food-items

However, a party cannot create a triable issue of fact by merely stating in an affidavit the proposition they are trying to prove. *Nova Grocery, Inc.*, 2022 WL 2657119, at *6 (citing *Loma Deli Grocery Corp.*, 2021 WL 4135216, at *9).

Further, Plaintiff states throughout its opposing brief that the evidence is not "clear cut", and that Plaintiff is unable to rebut each set of transaction that Defendant relied on without data matching so there are genuine disputes of material facts. Plaintiff stated in its opposition brief that it would file a declaration pursuant to Rule 56(d) seeking additional discovery. (Pl.'s Opp. Br. 14-15.) However, no such declaration was filed. The Court ordered Plaintiff to file the declaration if Plaintiff would like the Court to consider a request for additional discovery (ECF No. 36), but Plaintiff stated they would not be filing that declaration (ECF No. 37). In any event, the Court notes that Plaintiff received the unredacted A.R., which provided Plaintiff with the information necessary to data match and evaluate the comparator stores. The A.R. gave Plaintiff each of the flagged transactions, the household that made the transaction, the date, terminal, and the time that it was made. (A.R. 415-22.) Further, the A.R. contained the names of the stores that Defendant used as comparators and some interior pictures of the comparator stores. (A.R. 388-89.) Plaintiff relies on *Sue Tha Lei Paw v. United States* to state that it should have access to data matching, but unlike in the present case, the plaintiff in *Sue Tha Lei Paw* did not receive the unredacted administrative record. 2018 WL 1536736, at *4 (S.D. Cal. Mar. 29, 2018); *see also Loma Deli Grocery Corp.*, 2021 WL 4135216, at *8 (quoting *Young Choi*, 639 F. Supp. 2d at 1178) (FNS does not need evidence that a store was caught in the act of

"engaging in a food stamp violation in the summary judgment stage. The court may grant the government's motion for summary judgment based on evidence from transaction reports.").  Thus, notwithstanding Plaintiff's withdrawn request for discovery, additional discovery would not be appropriate here.

Therefore, FNS's determination that La Reyna more likely than not trafficked in SNAP benefits is well supported by the record, and Plaintiff has failed to raise any question of material fact as to the validity of FNS's decision.

### 3.  Imposition of a Permanent Disqualification

Finally, as the Court finds that a violation occurred, the Court turns to whether the sanction of permanent disqualification was arbitrary or capricious.  *Willy's Grocery v. United States,* 656 F.2d 24, 26 (2d Cir. 1981).  Determining whether a sanction is arbitrary or capricious is a matter of law decided on a motion for summary judgment and requires that an agency's decision be given substantial deference.  *Yafaie v. United States*, 1995 WL 422169, at *1 (S.D.N.Y. July 18, 1995); *Soler v. G. & U., Inc.,* 833 F.2d 1104, 1107 (2d Cir.1987).  A sanction is not arbitrary or capricious if the "federal agency properly adheres to its own regulations and guidelines when imposing it."  *Young Jin Choi v. United States*, 944 F. Supp. 323 (S.D.N.Y. 1996) (citing *Lawrence v. United States,* 693 F.2d 274, 276 (2d Cir. 1982)).

If FNS finds that a retailer engaged in trafficking, they must disqualify the retailer unless they determine that the retailer meets the criteria for a CMP.  7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 278.6(i).  To avoid disqualification, the retailer must provide documentation within ten calendar days of receiving the charge letter demonstrating that it met four criteria.  First, the

store must have "developed an effective compliance policy" as stated in 7 C.F.R. § 278.6(i)(1) to prevent violations.  Second, the compliance policy and training program must have been in effect prior to the violations cited in the charge letter occurred.  Third, the firm must have developed and instituted an effective personnel training program as specified in 7 C.F.R. § 278.6(i)(2).  Fourth, the store ownership "was not aware of, did not approve, did not benefit from, or was not in any way involved in the conduct or approval of trafficking violations."  *Id.*

In considering whether the store had a policy to meet the criteria under Section 278.6(i), FNS may consider "written and dated statements of firm policy," but "only if documentation is supplied which establishes that the policy statements were provided to the violating employee(s) prior to the commission of the violation."  7 C.F.R. § 278.6(i)(1).  Further, a store seeking a CMP "shall document its training activity by submitting to FNS its dated training curricula and records of dates training sessions were conducted; a record of dates of employment of firm personnel; and contemporaneous documentation of the participation of the violating employee(s) in initial and any follow-up training held prior to the violation(s)."  7 C.F.R. § 278.6(i)(2).

Here, the only evidence La Reyna submitted in support of a CMP in lieu of disqualification is a brief conclusory letter from the store owner stating that she "trained all the employees" and went through the training guide on the FNS website and reviewed SNAP rules in January of every year with her employees.  (*See* A.R. 442-43.)  Plaintiff did not not submit any written and dated statements of store policy, dated training curricula or records of training sessions, employment records, or contemporaneous documentation regarding employee

training, as mandated by Section 278.6(i).  Thus, FNS correctly disqualified Plaintiff permanently because La Reyna failed to meet first three criteria for a CMP.  (A.R. 640-41); *see Arias v. United States*, 2014 WL 5004409, at *13 (S.D.N.Y. Sept. 29, 2014) (finding FNS properly imposed a penalty of disqualification where plaintiffs provided some documentary evidence of compliance but failed to offer dated, documentary evidence of a compliance policy, curricula or other firm policies that met the requirements of Section 278.6(i)).  Because FNS followed regulations and guidelines requiring it to impose a permanent disqualification on La Reyna, the penalty was not arbitrary or capricious.  *Lugo v. United States*, 2009 WL 928136, at *3 (S.D.N.Y. Mar. 30, 2009) .

### CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment is granted.  This resolves the motion at ECF No. 21.  The Clerk of the Court is respectfully directed to terminate the motion at ECF No. 21 and to close the case.

**SO ORDERED.**

DATED:        New York, New York
              May 4, 2023

KATHARINE H. PARKER
United States Magistrate Judge